# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: JANUARY 21, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0007-MR

HARRY GULYARD, JR.                                             APPELLANT

                     ON APPEAL FROM HARDIN CIRCUIT COURT
V.                            HONORABLE KEN M. HOWARD, JUDGE
                                 NO. 16-CR-00694

COMMONWEALTH OF KENTUCKY                          APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING IN PART, VACATING IN PART, AND REMANDING</u>**

A Hardin County jury found Harry Gulyard, Jr. guilty of operating a motor vehicle under the influence of alcohol, aggravated, fourth offense and first degree persistent felony offender. Gulyard was sentenced to twenty years in prison. This appeal followed as a matter of right. *See* KY. CONST. § 110(2)(b). Having reviewed the record and the arguments of the parties, we hereby affirm in part and vacate in part the judgment of the Hardin Circuit Court and remand this case to the Hardin Circuit Court for entry of a new judgment in conformity with this Opinion.

## I. BACKGROUND

On August 2, 2016, Gulyard drank at least a 12-pack of beer and then drove his wife's metallic-colored Chevy Silverado 1500 to the FiveStar gas

station near his home. Along the way, he parked his wife's truck on top of a rock wall and proceeded the rest of the way to the gas station on foot. Meanwhile, Virgil Zicari went to the FiveStar to use the restroom and get a drink. Zicari parked his metallic-colored Chevy Duromax 2500 diesel pickup truck at a gas pump when he went inside the gas station and left the keys in the truck. While Zicari was inside the FiveStar, Gulyard arrived there. Gulyard went in the gas station and paid for five dollars in gas. He then put gas into Zicari's truck, got into the truck, and drove away. A short time later Gulyard was found driving Zicari's truck.

When police officers stopped Gulyard, they observed that he had bloodshot eyes, slurred speech, was unsteady on his feet, and smelled of alcohol. Officers arrested Gulyard and transported him to the Elizabethtown Police Department. At the police department, Gulyard submitted to an alcohol breath test using an instrument called an Intoxilyzer 8000. The Intoxilyzer showed that Gulyard had a breath alcohol content of 0.156.

On September 8, 2016, a Hardin County Grand Jury returned an indictment charging Gulyard with theft by unlawful taking, over $10,000, operating a motor vehicle under the influence of intoxicants, aggravated, fourth offense, operating a motor vehicle on a suspended license, and first degree persistent felony offender. Gulyard was arraigned on those charges in the Hardin Circuit Court on September 13, 2016. His case was set for a pretrial conference on October 11, 2016.

At the October 11, 2016, pretrial conference, defense counsel indicated that he was still waiting to receive some documents from the Commonwealth but that there were no discovery issues to discuss. Gulyard's case was then set for trial on February 27, 2017 with a pretrial conference set on February 21, 2017. On February 21, 2017, defense counsel stated the defense was ready to go to trial and there were no outstanding issues to discuss; however, the Commonwealth acknowledged it was still working to obtain records pertaining to the breathalyzer. Due to a conflict with the trial court's schedule, Gulyard's trial was moved to April 17, 2017, with a pretrial conference set on April 11, 2017.

On April 11, 2017, the Commonwealth moved to continue the trial to April 19, 2017, as its primary police officer witness was scheduled to be in training on April 17. Defense counsel informed the trial court he was scheduled to be in court in another county on April 19 and asked the trial court to begin the trial on April 20. After a bit of discussion regarding the number of trials scheduled in the trial court, the parties and the court agreed to begin the trial on April 20, 2017. No discussion of discovery issues occurred on this date.

The parties next appeared in court on April 20, 2017, the day the jury trial was scheduled to begin. Upon entering the courtroom, Gulyard claimed that defense counsel who was present with him and appeared with him every time he had been in court, was not his attorney. Gulyard claimed two other attorneys from the Department of Public Advocacy had been appointed to represent him, and that he did not want trial to go forward with the defense

3

counsel who was present representing him. The trial court explained that Gulyard was not entitled to choose his appointed attorney and that the current attorney was both experienced and capable.

After this initial conversation, defense counsel moved for a continuance "to ensure that [Gulyard] was comfortable." Counsel argued several bases for a continuance of the trial to the trial court, but Gulyard only argues one to this Court. Specifically, on appeal Gulyard argues that the trial court erred in denying his motion to continue the trial based upon the failure to turn over the Intoxilyzer maintenance and service records until shortly before trial. To the trial court, Gulyard argued that the Intoxilyzer records were critical to the case because that instrument established that Gulyard's breath alcohol content was .156, which subjected him to an aggravated penalty. The trial court denied Gulyard's motion finding that the records were regularly kept and available upon request and were not required for any foundational purpose.[1]

Gulyard's case proceeded to trial on its scheduled date. The Commonwealth dismissed the operating a motor vehicle on a suspended license charge without prejudice. The jury found Gulyard not guilty of the theft charge but guilty of both the operating a motor vehicle while intoxicated charge and the persistent felony offender charge. The jury recommended a sentence of twenty years in prison, and the trial court followed that recommendation. The

---

[1] It is unclear how the trial court concluded that the Intoxilyzer records were available to defense counsel upon request, as Gulyard *did* request them from the Commonwealth's Attorney and did not receive them until only a few days before trial.

trial court's judgment included a section entitled "Directions for Payment of Restitution." This section states, "As specified in KRS[2] 532.032 and KRS 532.033, Defendant shall pay restitution pursuant to these Conditions: Restitution shall be paid through the Circuit Court Clerk with a 5% service fee for the Benefit of Dale Crowder."[3] Dale Crowder is not mentioned anywhere else in the trial court record.

## II. ANALYSIS

Gulyard alleges two errors by the trial court. First, Gulyard argues the trial court erred in denying his motion for a continuance of the jury trial. Second, Gulyard argues the trial court's restitution order in its judgment was a clerical error that should be vacated. We will address each in turn.

### A. The trial court did not abuse its discretion in denying Gulyard's motion to continue the trial.

Gulyard's first argument on appeal is that the trial court abused its discretion when it denied his motion to continue made on the morning of the first day of his jury trial. This issue was preserved by his oral motion.

Motions for a continuance are governed by RCr[4] 9.04 which permits a trial court to grant a continuance "upon motion and sufficient cause shown by either party." The trial court has wide discretion when deciding whether to grant a motion for a continuance. *Hilton v. Commonwealth*, 539 S.W.3d 1, 10–

---

[2] Kentucky Revised Statutes.

[3] The judgment also included an address for Crowder, but we have not included it out of respect for his privacy.

[4] Kentucky Rules of Criminal Procedure.

5

11 (Ky. 2018). "[T]he denial of a motion for a postponement or continuance does not provide grounds for reversing a conviction 'unless that discretion has been plainly abused and manifest injustice has resulted.'" *Bartley v. Commonwealth*, 400 S.W.3d 714, 733 (Ky. 2013) (quoting *Hudson v. Commonwealth*, 202 S.W.3d 17, 22 (Ky. 2006)). The question of whether a motion for a continuance should be granted is determined by the "unique facts and circumstances" of the case. *Hilton*, 539 S.W.3d at 11. This Court will determine the trial court abused its discretion if its decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* at 7.

In exercising its discretion, the trial court must take into account certain factors. S*nodgrass v. Commonwealth*, 814 S.W.2d 579, 581 (Ky. 1991), *overruled on other grounds by Lawson v. Commonwealth*, 53 S.W.3d 534 (Ky. 2001). The trial court must consider the: 1) length of delay; 2) number of previous continuances; 3) inconvenience to parties, witnesses, counsel, and the court; 4) complexity of the case; 5) availability of other competent counsel; 6) whether the delay is purposeful or the movant caused the need for the delay; and 7) whether a denial of the continuance would lead to identifiable prejudice. *Id.* An analysis of the *Snodgrass* factors shows the trial court did not abuse its discretion when it denied the motion for a continuance.

In looking at length of delay, Gulyard did not request a specific amount of time for the continuance. As for previous continuances, Gulyard's trial had previously been continued two times, one due to a scheduling conflict with the trial court and the other due to a scheduling conflict of a witness for the

6

Commonwealth. Neither of those previous continuances were requested by Gulyard or caused by him.

Regarding inconvenience, the trial did not involve any expert witnesses or witnesses who had to travel from out of town to be present. However, the trial court was clear on the record that its trial calendar was very full. The court forwent the opportunity to try a different case that week and had made scheduling accommodations to ensure Gulyard's case could be tried. Further, Gulyard's counsel had assured the trial court just the week prior that he would be ready to try the case on April 20 if the court would set the case for trial on that date, despite knowing he did not yet have the Intoxilyzer records. The trial court relied on that assurance in fitting the trial into its busy calendar. Finally, the continuance was requested on the morning of the first day of trial, when the jury pool was already present in the courthouse, and any continuance would have caused inconvenience for those citizens.

Turning to complexity, Gulyard's case was not factually or legally complex. The jury heard less than three-and-one-half hours of testimony during the guilt phase and deliberated on only two counts of the indictment during that phase. Next, availability of other competent counsel is not applicable in this case, as Gulyard's attorney appeared competent and was otherwise prepared for trial.

It does not appear that Gulyard or his counsel purposefully caused the delay. However, his counsel's failure to diligently pursue the Intoxilyzer records or alert the trial court that the Commonwealth's failure to produce them would

7

impact his case weighs against granting the requested continuance. We acknowledge that in finding the Intoxilyzer records were not required for any foundational purpose, the trial court seemed to misapprehend the purpose for which Gulyard hoped to use the records, that is, to undermine the reliability of the results of the Intoxilyzer. However, the facts remain that at two pretrial conferences, the trial court asked the parties if there were any outstanding discovery issues that needed to be discussed. Although the Intoxilyzer records were mentioned by the parties, at each pretrial conference Gulyard's counsel answered the trial court's question in the negative.

Finally, we turn to whether a denial of the continuance led to any identifiable prejudice. "Identifiable prejudice is especially important. Conclusory or speculative contentions that additional time might prove helpful are insufficient. The movant, rather, must be able to state with particularity how his or her case will suffer if the motion to postpone is denied." *Bartley*, 400 S.W.3d at 733 (citing *Hudson,* 202 S.W.3d at 23). Aside from asserting the importance of the Intoxilyzer maintenance records to the case, Gulyard only argued that he wanted an expert to look at the maintenance records to "see if they were correct." He gave no reason to the trial court to believe that the maintenance records were incorrect or even to suspect that the records might be incorrect. This assertion is not specific enough to weigh in favor of granting Gulyard's requested continuance.

Upon reviewing all the *Snodgrass* factors, we hold that the trial court did not abuse its discretion in denying Gulyard's motion to continue the jury trial

8

in his case. It was reasonable for the trial court to find that the *Snodgrass* factors weighed in favor of denying the motion to continue.

**B. The trial court's restitution order appears to be a clerical error and is vacated.**

We next turn to Gulyard's argument that the portion of the trial court's judgment ordering him to pay restitution to Dale Crowder was a clerical error. Crowder was not a witness and his name is found nowhere else in the trial court record. The Commonwealth acknowledges the restitution order appears to be a clerical error and agrees that portion of the judgment should be vacated. Accordingly, we vacate the portion of the trial court's judgment ordering Gulyard to pay restitution to Dale Crowder.

### III.   CONCLUSION

For the reasons set forth above, we hereby vacate the portion of the judgment of the Hardin Circuit Court relating to restitution but affirm the remainder of that judgment. The case is remanded to the Hardin Circuit Court for entry of a new judgment in conformity with this Opinion.

All sitting. All concur.

9

COUNSEL FOR APPELLANT:

Erin Hoffman Yang
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Todd Dryden Ferguson
Assistant Attorney General

Micah Brandon Roberts
Assistant Attorney General